New York Life Insurance Company, a Corporation, Plaintiff and Counterdefendant, v. Lillian Rak, etc. et al., Defendants and Counterdefendants.
Helen Bernotes, Defendant and Counterdefendant, Appellee. John E. Owens, Special Administrator of the Estate of Joseph C. Rak, Deceased, Defendant and Counterclaimant, Appellant.

Gen. No. 48,151.

First District, Third Division.

March 22, 1961.

McKinley & Price, of Chicago (Paul E. Price, of counsel) for counterclaimant-appellant.

Hoffman & Davis and David M. Krichiver, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The New York Life Insurance Company filed an interpleader suit whereby the proceeds of two policies of life insurance upon the life of Joseph Rak, deceased,

in the face amounts of $25,000 and $50,000, respectively, were deposited with the clerk of the Superior Court to abide the determination of the court as to which rival claimant was entitled to receive such proceeds. The two beneficiaries named in the policies were Helen Bernotes and Moneta Turek. Moneta Turek had predeceased the insured. The insured left him surviving his widow, Lillian Rak.

In its complaint the New York Life Insurance Company set up that the rival claimants to the death benefits were Lillian Rak, in her capacity as administratrix of the estate of the insured, and Helen Bernotes, sister of the insured. Lillian Rak later intervened in her own proper person, and John E. Owens was substituted as special administrator in the place and stead of Lillian Rak as administratrix of the estate of Joseph C. Rak, the deceased insured. Owens filed a counterclaim in the case asking that the policies of insurance be reformed.

All the pleadings are in order. The court entered an interlocutory decree which recited that the New York Life Insurance Company had deposited the entire death benefit proceeds of the policies, amounting to $75,346.77, with the clerk of the court subject to the further order of the court; and the decree also provided, among other things, that it should be without prejudice to the hearing and disposition of the amended counterclaim of John E. Owens, special administrator of the estate of Joseph Rak, deceased, against the New York Life Insurance Company for reformation of the policies of insurance which are the subject matter of this interpleader, or to the claims of the rival claimants who have been interpleaded or are parties to the interpleader suit. It also dismissed out the New York Life Insurance Company, except with respect to the entry of relief prayed against it for reformation, and the insurance company was awarded its costs of $29.30 from the moneys on deposit with the clerk.

Joseph Rak on September 29, 1957 executed an application for whole life insurance with the New York Life Insurance Company for a policy in the amount of $75,000. In that application, under item 20 entitled "Beneficiary," the deceased directed that the beneficiaries in said policies were to be designated as follows: "Helen Bernotes, my sister and Moneta Turek, my sister, equally." The application contains the following provision: "It is Mutually Agreed That . . . (4) The Applicant's acceptance of any policy issued on the application shall constitute ratification of all representations and agreements made in writing as part of the application and of any amendments and corrections which the Company makes and refers to under item 25 above in connection with issuance of the policy." The referred to item 25 has above the blank space the words "Amendments and Corrections," and it contains the following statement:

"(51) Alternative policy for $50,000 written on the Whole Life Plan
"(51) Alternative policy for $25,000 written on the Whole Life Plan."

The New York Life Insurance Company issued two policies of insurance. One policy was issued on November 13, 1957 under effective date of October 23, 1957 in the face amount of $25,000 on the whole life plan. The other policy was issued on November 1, 1957 under effective date of November 1, 1957 in the face amount of $50,000 on the whole life plan. Both policies designated beneficiaries as follows: "Helen Bernotes and Moneta Turek, sisters of the insured, share and share alike, or the survivor."

The insured married Lillian Rak on August 30, 1958. He died on November 13, 1958. Moneta Turek, one of his sisters, died November 28, 1957.

After a hearing the trial court entered a decree finding the defendant Helen Bernotes to be entitled to the

entire proceeds of the policies. John E. Owens, special administrator, hereafter referred to as the appellant, prosecutes this appeal from that portion of the decree failing to find that the estate of Joseph Rak, deceased, was entitled to one-half of the proceeds of the said policies. Subsequent to the filing of the notice of appeal the court entered an order that the clerk of the court, in partial performance of the decree, pay to the defendant Helen Bernotes the sum of $37,658.73 out of the fund of $75,317.47 on deposit with the clerk.

The appellant here contends that the New York Life Insurance Company, through inadvertence, error or oversight, (a) failed to issue the policies as applied for; (b) failed to correctly express or set forth the terms of the contract of insurance as provided in the application pursuant to which the contract was issued; (c) accepted the application as tendered in all respects, except for the changes noted under item 25 captioned "Amendments and Corrections," calling for two policies instead of one, but inadvertently issued said policies with an added provision which materially conflicted with the application as tendered by the insured and as accepted by the company. The appellant asks that the policies be reformed to conform with the beneficiary designation contained in the application.

Helen Bernotes, hereafter referred to as the appellee, contends that the policies, when accepted, constitute the contract; that the retention of the policies by the insured and the payment of the premiums evidence an acceptance of the policies as they were delivered to the insured; that the insurance policies as delivered correctly express the true intention of the decedent that the entire proceeds of the policies be payable to decedent's sisters in equal shares or all to the surviving sister; that there was not sufficient evidence to establish an intention other than that expressed in the policies; and that even if the policies were reformed so as to be payable as set out in the precise words of

91

the application, nevertheless the surviving sister would be entitled to recover the full proceeds of the policies.

 In order for the appellant to prevail in his suit for reformation of the insurance contract he must show by clear and convincing evidence that either through design or the mistake of the insurance company the policies as issued were not the policies applied for by the insured. Keith v. Globe Ins. Co., 52 Ill. 518. The appellant must show that had the policies been issued in accordance with the application presented by the insured the beneficiaries would not have had the right of survivorship.

 The application as written provided that "Helen Bernotes, my sister and Moneta Turek, my sister, equally" would be beneficiaries. The question as to whether the right of survivorship would come into being had the policies been issued under the terms of the application may be determined by considering the terms "tenancy in common" and "joint tenancy" in respect to realty and at common law. Farr v. Trustees of Grand Lodge A. O. U. W., 53 N.W. 738, (Wis.), 18 L.R.A. 249. At common law a conveyance of real estate or a transfer of personal property to two or more persons, without adding any qualifying words, vested the title in such grantees or transferees as joint tenants with the right of survivorship. Svenson v. Hanson, 289 Ill. 242, 247, 124 N. E. 645, 647; 23 I.L.P. Joint Tenancy, sec. 2. Our statute concerning joint rights and obligations (chapter 76 of the Illinois Revised Statutes) provides that a conveyance of real estate or personal property to two or more persons, without adding any qualifying words, vests the title in the grantees as tenants in common and not as joint tenants. Section 2 of the statute, dealing with personal property, makes certain exceptions to the rule, among others, as to executors and trustees. It is not necessary for us to consider whether the statute could

have any effect on an insurance contract such as this. The qualifying word "equally" has always been regarded as implying a tenancy in common in the grantees, donees etc. Taylor v. Stephens, 74 N. E. 980, 983 (Ind.). In Stetson v. Eastman, 24 A. 868, 870 (Maine), the court quotes 2 Jarman on Wills (p. 253) as saying: " 'A devise or bequest to several persons "equally amongst them," or "equally," or "in equal moities," or "share and share alike," or "respectively" . . . has been held . . . to make the objects tenants in common.' " See also Boston Safe Deposit & Trust Co. v. Doolan, 29 N.E.2d 844, 848 (Mass.).

Each of the policies as issued provides: "Unless otherwise provided in this policy or in a beneficiary designation in effect under the policy, (a) if any beneficiary dies before the Insured, the interest of that beneficiary will vest in the Owner . . . ." Had the policies been issued in accordance with the application there would have been no right of survivorship in the beneficiary Helen upon the death of beneficiary Moneta even though the policies had lacked the quoted provision.

█ The law is well settled that a court of equity may reform an insurance policy where the contracting parties make a mistake and the policy fails to express the real contract between them. Metropolitan Life Ins. Co. v. Henriksen, 6 Ill.App.2d 127, 135, 126 N.E.2d 736, 740, and cases therein cited; Stoltz v. National Indem. Co., 345 Ill. App. 495, 501, 104 N.E.2d 320, 323.

██ In an attempt to determine what the intention of the insured was with reference to having the right of survivorship accrue to the designated beneficiaries, the insurance agent who had made out the application was called by the appellant and was examined with reference to conversations had by him with the insured at the time the application was signed. His testimony was confused and contradictory. He testified that he had told the insured at the time when

93

the application was being prepared that in case one of the sisters predeceased the insured her one-half interest in the policies would go to the surviving sister. He also testified that he told the insured that in case one of the sisters predeceased him her one-half beneficiary's share of the policies would go to the estate of the insured. We think his testimony is of little or no value for the purpose of throwing light upon the intention of the insured at the time the application was executed. Consequently under those circumstances, the wording of the application being clear and definite, the insured's intention must be determined therefrom. There was no ambiguity to resolve. Clear and unambiguous words and phrases should be construed in their plain, ordinary, natural, fair, usual and popular meaning, in the absence of relevant evidence indicating that the words were used with a different meaning or unless they have been given a contrary legal construction. While words should be given their ordinary meaning, they must be construed in accordance with established rules of law even though the insured may not be familiar with their legal meaning. The judicial construction placed upon particular words or phrases will be presumed to have been the construction intended to be adopted by the parties; otherwise the language used should have been modified to make the contrary intention clear. Couch on Insurance, 2nd ed., secs. 15.17 and 15.20; 22 I.L.P. Insurance, sec. 141; Taylor v. Stephens, supra. Applying that canon of interpretation the clear intent of the insured, as expressed in the application, was that there should be no right of survivorship attaching to the beneficiaries, and it is evident that the insurance policies did not conform to that intent. Neither the trial court nor this court can indulge in speculation as to what might have been in the contemplation of the insured at the time the application was made out.

▆▆▆▆ Each policy contains the provision in apt terms that the application should be made a part of the policy. Under those circumstances the court will read the application into the contract of insurance, and the policy and the application must be construed together and any controversy must be determined by an examination of both the application and the policy. 22 I.L.P. Insurance, sec. 146. Where there is an irreconcilable conflict between the application for insurance and the policy issued as to the beneficiary, receipt and retention of a policy with knowledge as to whom it is payable constitutes a ratification by the insured and it is accepted as written. 22 I.L.P. Insurance, sec. 123. The appellee argues that that rule applies to the instant case, and in support of her contention cites Metropolitan Life Ins. Co. v. Whitler, 172 F.2d 631 (7th Cir.). That case holds that the receipt and retention of the policy *"with knowledge as to whom it is payable* constitutes ratification and it is accepted as written." (Italics ours.) In the case before us there is no proof that the insured knew the terms of the policies concerning the beneficiaries. There was no ratification under the rule. Furthermore, the insured's mistake in failing to discover the terms of the policies does not apply to suits for reformation of the insurance contract. In Stoltz v. National Indemnity Co., supra, the court says:

"Defendant further contends that a person who accepts and retains possession of an insurance policy is bound to know its contents and cites in support thereof the cases of Pollock v. Connecticut Fire Ins. Co., 362 Ill. 313; and Capps v. National Union Fire Ins. Co., 318 Ill. 350. In each instance the cases cited by defendant were actions at law on a policy to collect for a loss sustained and involved the construction of the insurance

policy. This rule does not apply to an equitable proceeding for reformation and the insured's mistake in failing to discover the terms of the policy is not negligence as a matter of law. Hould v. Maryland Casualty Co., 83 N. H. 474, and Heath Delivery Service v. Michigan Mutual Liability Co., 257 Mich. 482."

In Castellina v. Vaughan, 11 S.E.2d 536 (W. Va.), the court says:

"But when the policy incorporates the application, and through mere clerical inadvertence departs from it, as occurred here, the policy does not reflect the intention of the parties and the application controls. 2 Cooley's Briefs on Ins., 2d Ed., 1099; Eckler v. Terry, 95 Mich. 123, 54 N. W. 704; German American Ins. Co. v. Darrin, 80 Kan. 578, 103 P. 87. 'The rule of interpretation of insurance contracts, and the first object of construction, are to ascertain the intention or meaning of the parties, and the duty of the courts is to construe the contract accordingly.' Couch, Cyc. of Ins. Law, § 173. It is further stated, as a general rule, that the applicant may assume that his policy conforms to his application, and his failure to read the policy, alone, is not of material consequence. Joyce, supra [Joyce, Insurance, 2nd ed.], § 55b; McElroy v. Assur. Co., 9 Cir., 94 F.2d 990."

▮▮▮▮▮ The instant case is stronger than any of the cases herein cited since the application provides that the applicant's acceptance of the policy issued on the application is a ratification of all "representations and agreements made in writing as part of the application and of any amendments and corrections which the Company makes and refers to under item 25 above in connection with issuance of the policy." In the

96

application, in the space under item 25, the insurance company indicated that instead of a single policy for $75,000, as was asked for in the original application, two policies were being issued, one for $50,000 and the other for $25,000 in accordance with a request made by the insured. The insured could properly assume that the policies would be issued in accordance with his instructions in the application, and he is entitled to rely upon such assumption. Keith v. Globe Ins. Co., supra; Castellina v. Vaughan, supra. We hold that the appellant has established that the policies of insurance were, through the mistake of the insurance company, not issued in accordance with the application. The insured under the provisions of the application and the policies in this case was not bound to know that through the negligence of the company the policies were issued in terms different from those contained in his application. As was said in Stoltz v. National Indem. Co., supra:

> "Where the contracting parties to a policy of insurance make a mistake and the policy fails to express the real contract between them, and provisions other than those intended are inserted or omitted, equity has the right to grant relief by reformation of the contract. Beddow v. Hicks, 303 Ill. App. 247; German Fire Ins. Co. v. Gueck, 130 Ill. 345; Home Ins. & Bank Co. v. Myer, 93 Ill. 271."

See also Metropolitan Life Ins. Co. v. Henriksen, supra.

Insofar as the decree directs that one-half of the proceeds of the insurance policies be paid to Helen Bernotes it is affirmed. As to the other one-half of the proceeds the decree is reversed and the cause is remanded with directions that the policies as written should be reformed to read that the beneficiaries of

said policies of insurance are Helen Bernotes and Moneta Turek, sisters of the insured, equally, and that the sum of $37,658.74, the balance of the proceeds of the policies remaining on deposit with the clerk, be paid to John E. Owens, as special administrator of the estate of Joseph C. Rak, deceased.

Affirmed in part; reversed in part and remanded with directions.

SCHWARTZ, P. J. and DEMPSEY, J., concur.